IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| COMMERCIAL FIRE PROTECTION, LLC,<br><br>        Plaintiff,<br>  v.<br><br>MICHAEL DUANE PIGG and PREMIER FIRE PROTECTION, LLC,<br><br>        Defendants. | Case No.: 3:24-cv-00922-AN<br><br><br>OPINION AND ORDER |

        Plaintiff Commercial Fire Protection, LLC ("CFP") brings this action against defendants Michael Duane Pigg ("Pigg") and Premier Fire Protection, LLC ("Premier"), alleging misappropriation of trade secrets under federal and Oregon law, breach of duty of loyalty, and intentional interference with economic advantage, and seeking injunctive relief. Defendants moved to dismiss for failure to state a claim. After reviewing the relevant pleadings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

        A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inference from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

At the motion to dismiss stage, a court's review is limited to the face of the complaint, *Levine v. Diamamthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991), any documents referenced in the complaint "whose authenticity no party questions," *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (citation omitted), and any matters of which the court may take judicial notice, such as public records and "records of reports of administrative bodies," *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *see MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (citations omitted).

## BACKGROUND

CFP is a fire protection company. Compl., ECF [1], ¶ 4. Pigg is a former employee of CFP and Premier is a competing fire protection company. *Id.* ¶¶ 1-2.

CFP alleges that it hired Pigg in April 2020 as a lead fire alarm technician. *Id.* ¶ 10. At that time, CPF gave plaintiff an employee handbook that contained a provision regarding outside employment. *Id.* ¶ 13. That provision stated: "While employed by [CFP], employees are expected to devote their energies to their jobs with the Company. Employment that directly conflicts with the Company's

essential business interest and disrupts business operations is strictly prohibited." *Id.* Plaintiff signed an acknowledgment that he reviewed and understood the employee handbook's contents. *Id.*

In January 2022, CFP promoted Pigg to a higher position: portfolio manager. *Id.* ¶ 11. In the new position, Pigg held a variety of responsibilities that required he be given access to certain of plaintiff's trade secrets, "including pricing structures, client lists, marketing approaches, checklists, and other forms." *Id.* He was also "responsible for maintaining and growing [CFP's] customer goodwill, and he was afforded control over [CFP's] Oregon and Washington employees, equipment, vehicles, and certain key customer relationship." *Id.* Pigg founded Premier, which offers the same services as CFP in the same markets, in 2023, while still employed by CFP. *Id.* ¶ 12.

In May 2024, CFP discovered that Pigg was using at least one of CFP's employees to complete work for Premier. *Id.* ¶ 14. CFP alleges that Pigg "sought to sour the relationship between [CFP] and its employees" by, for example, falsely telling employees that Pigg had asked CFP to pay its employees more money, but that CFP denied the request. *Id.* Pigg then "induce[d] [CFP's] employees to join him at Premier and/or recruit[ed] them to complete work for Premier while employed by [CFP][.]" *Id.* ¶¶ 14-16. CFP alleges that Pigg recruited one employee who "called out sick from a scheduled shift with [CFP] to complete work for Premier" and who "was observed at that job site, using [CFP]'s truck and equipment" while "wearing Premier's uniform." *Id.* ¶ 17. CFP further alleges that defendants "used [CFP's] equipment, including its trucks and tools, while completing competing work for Premier[,]" and that defendants "used [CFP's] [t]rade [s]ecrets to secure and complete competing work on behalf of Premier." *Id.* ¶¶ 19-20.

Based on these allegations, CFP asserts four claims for relief: (1) breach of duty of loyalty, against Pigg; (2) two counts of intentional interference with economic advantage, against both defendants; (3) misappropriation of trade secrets under both the federal Defend Trade Secrets Act ("DTSA") and the Oregon Uniform Trade Secrets Act ("OUTSA"), against both defendants; and (4) injunction, against both defendants. CFP filed a motion for temporary restraining order on June 11, 2024, ECF [4], which this Court denied on June 25, 2024, ECF [18]. Defendants filed a motion to dismiss for failure to state a claim on July 2, 2024. Defs. Mot. to Dismiss ("Defs. Mot."), ECF [19]. CFP filed a response on July 16, 2024. Pl. Resp.

3

in Opp'n to Defs. Mot. ("Pl. Resp."), ECF [21]. Defendants filed their reply on July 30, 2024. Defs. Reply in Supp. Defs. Mot., ECF [22].

## DISCUSSION

**A.     Claim for Injunction**

CFP concedes that its claim for injunction is improper, and this claim is thus appropriately dismissed with prejudice. *See Henry v. Gerber Prods. Co.*, No. 3:15-cv-02201-HZ, 2016 WL 1589900, at *4 (D. Or. Apr. 18, 2016) (citations omitted) ("an injunction is a type of relief, not a separate cause of action"); *Charleston v. Wells Fargo Bank, N.A.*, No. 3:17-cv-00595-PK, 2018 WL 648364, at *2 (D. Or. Jan. 31, 2018) (citations omitted) (dismissing claims for declaratory and injunctive relief with prejudice because "'claims' for declaratory and injunctive relief are requests for remedies to other claims and are not 'claims for relief' in themselves").

**B.     Claim for Misappropriation of Trade Secrets**

To succeed on a claim for misappropriation of trade secrets, a plaintiff "must show (1) the information was in fact a trade secret; (2) [the] [p]laintiff took reasonable measures to maintain the secrecy of the information; and (3) [the] [d]efendants' conduct constitutes misappropriation." *Kinship Partners, Inc. v. Embark Veterinary, Inc.*, No. 3:21-cv-01631-HZ, 2022 WL 72123, at *4 (D. Or. Jan. 3, 2022) (citing *Univ. Acct. Serv., LLC v. Schulton*, No. 3:18-cv-1486-SI, 2019 WL 2425122, at *5 (D. Or. June 10, 2019)). For the reasons set forth below, CFP has not alleged sufficient facts as to any of the three elements.

1.     *Trade Secrets Alleged*

Under the OUTSA, a "trade secret" is any information that both (1) "[d]erives independent economic value, actual or potential, from not being generally being known to the public or to other persons who can obtain economic value from its disclosure or use[,]" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Or. Rev. Stat. § 646.461(4). This definition is a "broad" one and includes, for example, "a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process[.]" *Id.*; *see Kinship Partners, Inc.*, 2022 WL

72123, at *4. "Under the DTSA, 'the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information.'" *Kinship Partners, Inc.*, 2022 WL 72123, at *4 (quoting 18 U.S.C. § 1839(3)). "Typically, 'whether information is or is not a trade secret is a question of fact.'" *DropzoneMS, LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 WL 7630788, at *9 (D. Or. Sept. 12, 2019), *supplemented*, 2019 WL 7633155 (D. Or. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 591353 (D. Or. Feb. 6, 2020).

A "plaintiff must identify its alleged trade secrets with sufficient particularity so that defendants are able to determine whether the information in question was in fact secret and whether it was in fact not readily ascertainable through appropriate means." *Jamison v. Olin Corp.-Winchester Div.*, Nos. 03-1036-KI *et al.*, 04-31-KI, 04-76-KI, 2005 WL 7213837, at *9 (D. Or. Oct. 4, 2005), *report and recommendation adopted*, 2005 WL 2897036 (D. Or. Nov. 3, 2005). "Courts apply th[e] sufficient particularity requirement at both early and later stages of litigation with some frequency." *DropzoneMS, LLC*, 2019 WL 7630788, at *10 (citations omitted). At the motion to dismiss stage, "the alleged trade secrets must be more than vague descriptions." *Bite Tech Inc. v. X2 Impact, Inc.*, No. C12-1267RSM, 2012 WL 13018749, at *3 (W.D. Wash. Dec. 21, 2012) (analyzing the Washington Uniform Trade Secrets Act ("WUTSA"), which is similar to the OUTSA). Though a plaintiff "need not 'spell out the details of the trade secret,'" it is required to at least "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *CleanFish, LLC v. Sims*, No. 19-cv-03663-HSG, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020) (quoting *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)) (analyzing the California Uniform Trade Secrets Act ("CUTSA"), which is similar to the OUTSA). Put differently, the degree of specificity required from a plaintiff is "clear[] refer[ence] to tangible trade secret material[,]" as opposed to "refer[ence] to [information] which *potentially* qualifies for trade secret protection." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (emphasis in original) (other emphasis omitted) (citing *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336,

5

1342 (9th Cir. 1982)). Ultimately, a "[p]laintiff's failure to describe its trade secrets with sufficient particularity is fatal to its trade secret misappropriation claims." *DropzoneMS, LLC*, 2019 WL 7630788, at *10.

In *CleanFish, LLC*, the court considered whether the plaintiff had sufficiently alleged its trade secrets for purposes of surviving the defendants' motion to dismiss. 2020 WL 1274991, at *9-10. The plaintiff alleged "that its trade secrets 'included detailed customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends.'" *Id.* at *9. The court called these "broad categories of information that would be applicable to any business" and stated that "the[] purported 'trade secrets' [are] indistinguishable from matters of general knowledge within the parties' industry[.]" *Id.* Such "allegations are too high-level to give the [c]ourt or [the] [d]efendants notice of the boundaries of the alleged trade secret." *Id.* (citations omitted) (collecting cases). The court also specifically addressed the issue of customer lists, stating that the plaintiff's allegations regarding customer lists were insufficient to describe a trade secret because "client information constitutes a trade secret when that information is 'assembled over many years' and allows a company 'to tailor[] its service contracts and pricing to the unique needs of its customers.'" *Id.* at *10 (alteration in original) (quoting *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993)).

Here, CFP alleges that its trade secrets include "pricing structures, client lists, marketing approaches, checklists, and other forms." Compl. ¶¶ 11, 45. CFP also alleges in its response that Pigg "had access to [p]laintiff's employees' compensation information[,]" which "is not public and [which] prospective employers are, in fact, prohibited from inquiring as to an applicant's current wage." Pl. Resp. 4 (citing Or. Rev. Stat. § 659A.357). At the motion to dismiss stage, however, the Court's review is generally limited to the contents of the complaint. The Court therefore does not, at this time, consider the additional allegations set forth in plaintiff's response regarding compensation information.

The allegations set forth in CFP's complaint are not sufficiently particular to provide either this Court or defendants with "notice of the boundaries of the alleged trade secret." *CleanFish, LLC*, 2020 WL 1274991, at *9. Like the plaintiff in *CleanFish, LLC*, CFP has alleged only "broad categories of

6

information that would be applicable to any business" and which are "indistinguishable from matters of general knowledge within the parties' industry." *Id.* Though these categories "refer[ence] [] [information] which *potentially* qualifies for trade secret protection[,]" CFP does not identify with sufficient particularity any "clear[] refer[ence] to tangible trade secret material." *Imax Corp.*, 152 F.3d at 1167 (emphasis in original) (other emphasis omitted) (citing *Henry Hope X-Ray Prods., Inc.*, 674 F.2d at 1342).

Citing *Dial Temporary Help Service, Inc. v. Shrock*, CFP argues that this Court should not apply *CleanFish, LLC* because California has not adopted the Uniform Trade Secrets Act ("UTSA"). 946 F. Supp. 847, 854 (D. Or. 1996). However, since *Dial* was decided, California enacted the CUTSA, which is, at least for purposes of analyzing a trade secret misappropriation claim, "essentially the same" as the DTSA. *CleanFish, LLC*, 2020 WL 1274991, at *8. CFP's reliance on *Dial* is also not persuasive because it is both procedurally and factually distinguishable from this case. Analyzing the plaintiff's claims under a summary judgment standard, the *Dial* court found that the plaintiff had set forth "evidence that [its alleged trade secrets] were created through the [defendants'] efforts . . . ; that [its alleged trade secrets] contain non-public information, such as data on how pleased the employer-customers were with particular temporary employees assigned to them; and that the [defendants] agreed to keep the information confidential as part of their oral agreement." 946 F. Supp. at 854. CFP is not, at the motion to dismiss stage, required to set forth evidence. However, it has failed to set forth even factual *allegations* to support its claims. This Court finds *CleanFish, LLC* to be persuasive authority, particularly where the *CleanFish, LLC* court cited a case from this district for the proposition that a plaintiff "should plead with sufficient specificity the precise identity of the claimed lists, and the alleged basis for concluding any customer lists are trade secrets and outside the bounds of general knowledge within the industry." Defs. Reply 3 (citing *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1165 (D. Or. 2015)).

CFP's failure to satisfy the sufficient particularity element is, alone, an adequate basis upon which to dismiss CFP's claim for misappropriation of trade secrets. However, the Court offers its consideration of the remaining elements as guidance, in the event that CFP should choose to amend.

2.      *Reasonable Measures to Maintain Secrecy*

Under the OUTSA, "the information must be 'secret,' i.e., 'not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.'" *Jamison*, 2005 WL 7213837, at *9 (quoting Or. Rev. Stat. § 646.461(4)(a)). Furthermore, "the information [must] not be 'readily ascertainable by proper means.'" *Id.* (citations omitted). This is because "courts have held that '[i]nformation that an individual discloses to others who are under no obligation to protect its confidentiality' does not qualify for trade secret protection." *DAT Sols., LLC v. Convoy, Inc.*, 3:22-cv-00088-IM, 2023 WL 3058057, at *5 (D. Or. Apr. 24, 2023) (alteration in original) (citation omitted). The secrecy "inquiry is a highly fact-specific one, requiring the owner of the alleged trade secret to 'take reasonable, though not overly extravagant, measures to protect its secrecy.'" *Alt. Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*, No. CV-07-880-ST, 2009 WL 10733692, at *11 (D. Or. May 5, 2009) (citations omitted). Reasonable measures might include, for example:

> "[R]equiring employees to sign confidentiality agreements or otherwise making them aware of the confidential nature of the process, posting warning or cautionary signs or placing warnings on documents, requirement visitors to sign confidentiality agreements, sign in, and shielding the process from their view, segregating information, using unnamed or code-named ingredients, and keeping secret documents under lock and key."

*Id.* (citation omitted).

Here, CFP alleges simply that its "[t]rade [s]ecrets include pricing structures, client lists, marketing approaches, checklists, and other forms, all of which have independent value and which [CFP] has taken reasonable efforts to keep secret." Compl. ¶ 45. But this allegation, without the allegation of facts tending to show *what* reasonable efforts CFP took, is conclusory. For example, CFP does not allege that it required employees to sign confidentiality agreements before they could access the trade secrets at issue, that CFP had "disclosure policies . . . in place[,]" or that CFP's "trade secrets were not published or frequently disseminated to customers[.]" *DAT Sols., LLC*, 2023 WL 3058057, at *5 ("[C]onfidentiality provisions constitute reasonable measures to maintain secrecy."); *see T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) ("[The plaintiff] described many security measures, including limits on access to its clean room, limits on who could enter it, effects to monitor what

occurred in the clean room, and efforts to immediately address [the defendant's] theft of information from the clean room."). CFP must allege facts tending to show that it took reasonable efforts to keep secret its alleged trade secrets. Without such allegations, CFP's claim is appropriately dismissed.

      3.    *Misappropriation*

Misappropriation occurs when "[a] person . . . acquire[s], use[s], or disclose[s] a trade secret with knowledge or reason to know that the trade secret was obtained through improper means." *AssuredPartners of Or., LLC v. Reese*, No. 6:22-cv-00673-MC, 2022 WL 18024957, at *2 (D. Or. Dec. 30, 2022) (citing 18 U.S.C. § 1839(5); Or. Rev. Stat. § 646.461(2)). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." *Id.* (internal quotation marks omitted) (citing Or. Rev. Stat. § 646.461(1); 18 U.S.C. § 1839(6)(A)). "[K]nowledge of an employee's misappropriation is not enough; the plaintiff must allege that each defendant 'actually used,' acquired, or disclosed the trade secret." *Id.* at *3 (footnote omitted) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 80 (N.D. Cal. 2020)). In other words, "[t]he plaintiff must 'specifically connect allegations of misappropriation to specific [d]efendants' actions.'" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Kinship Partners*, 2022 WL 72123, at *5). "'Use' is a broad concept, encompassing not only incorporation of confidential information into a competing product, but also the garnering of a strategic advantage." *Alt. Legal Sols., Inc.*, 2009 WL 10733692, at *12; *see Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192-HZ, 2021 WL 3713042, at *4 (D. Or. Aug. 19, 2021) (citations omitted) (collecting cases). Restated succinctly,

> "Misappropriation includes the improper acquisition, disclosure, and use of a trade secret, including the 'use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reasons to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.'"

*Opal Labs Inc.*, 2021 WL 3713042, at *4 (quoting Or. Rev. Stat. § 646.461(4)).

Here, CFP has again set forth conclusory allegations. CFP states that "[d]efendants misappropriated [CFP's] [t]rade [s]ecrets by using [CFP's] [t]rade [s]ecrets for his [*sic*] own commercial benefit" and that "[a]t the time of use, [CFP's] [t]rade [s]ecrets were improperly derived from Pigg's

9

relationship with [CFP] under which Pigg owed [CFP] a duty of loyalty." Compl. ¶ 46. These allegations do not "specifically connect allegations of misappropriation to specific [d]efendants' actions," and are insufficient to establish "that each defendant 'actually used,' acquired, or disclosed [a] trade secret." *AssuredPartners of Or., LLC*, 2022 WL 18024957, at *3 (alteration in original) (internal quotation marks omitted) (quoting *Kinship Partners*, 2022 WL 72123, at *5) (granting motion to dismiss claim for misappropriation of trade secrets where the plaintiff's allegations of misappropriation amounted to "a legal conclusion unsupported by factual allegations in the [c]omplaint"). For this reason too, CFP's claim is appropriately dismissed.

C.    **Preemption of Remaining State Law Claims**

Defendants argue that plaintiff's state law claims should be dismissed because they are based on the same facts as his trade secret misappropriation claim and are therefore preempted by the OUTSA. Plaintiff argues that his claims are not preempted, and that to the extent the Court finds that they are, plaintiff should be granted leave to amend to remove any trade secret allegations from these claims.

The "OUTSA . . . 'supersedes conflicting tort, restitution or other law of Oregon providing civil remedies for misappropriation of a trade secret.'" *Alt. Legal Sols., Inc.*, 2009 WL 10733692, at *13 (quoting Or. Rev. Stat. § 646.473(1)). "However, th[e] preemption provision does not apply to '(1) contractual remedies, whether or not based upon misappropriation of a trade secret, or (2) other civil remedies that are not based upon misappropriat[ion] of a trade secret.'" *Id.* (quoting Or. Rev. Stat. § 646.473(2)). "Oregon courts have not interpreted the language of ORS § 646.473 or addressed the extent to which the [OUTSA] preempts civil remedies[;]" however, "[c]ases from [the District of Oregon] and elsewhere . . . have concluded that 'the preemptive effect' of the statute extends 'to claims that are based on the same operative facts as a claim for trade secret misappropriation under the [OUTSA].'" *Opal Labs Inc.*, 2021 WL 3713042, at *6 (internal alterations and citations omitted). While "case law on this issue is sparse, the critical issue is crystal clear: 'Where the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the [OUTSA].'" *Alt. Legal Sols., Inc.*, 2009 WL 10733692, at *13 (quoting *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d

10

1204, 1217 (D. Or. 2004) (finding the plaintiff's tort claim to be preempted because it was "based on [the] [d]efendants' wrongful appropriation of confidential information from [the plaintiff] and using [that information] for [defendants'] own benefit")).

Importantly, the OUTSA "preempt[s] 'claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret.'" *Id.* (quoting *Morg. Specialists, Inc. v. Davey*, 904 A.2d 652, 664 (N.H. 2006)); *Opal Labs Inc.*, 2021 WL 3713042, at *6 (citations omitted). "[D]etermining whether a claim is preempted requires the court to 'examine the facts alleged in support of each claim to determine the extent to which the claim is based upon the misappropriation of trade secrets or other information.'" *Alt. Legal Sols., Inc.*, 2009 WL 10733692, at *13 (quoting *Morg. Specialists, Inc.*, 904 A.2d at 664) (finding tortious interference claim to be preempted "where all of the plaintiff's claims were 'premised upon a single series of circumstances and events with its genesis in [the] defendants' unauthorized access to [the plaintiff's] [information]'"). Put succinctly, "[w]here the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Act." *Acrymed, Inc.*, 317 F. Supp. 2d at 1217 (citations omitted) (further noting that "a number of courts in other states have extended the preemptive effect of the same language to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Act").

Ultimately, "there are numerous ways in which a defendant may interfere with contracts between a plaintiff and its customers for improper purposes or improper means that do not rely on that defendant misappropriating trade secrets." *Precision Automation, Inc. v. Tech. Servs., Inc.*, No. 07-cv-707-AS, 2007 WL 4480736, at *2 (D. Or. Dec. 14, 2007) (declining to dismiss tortious interference claim as preempted where it "was not dependent on allegations of misappropriated trade secrets"). At base, the allegations of improper means must be supported by "additional facts beyond the alleged misappropriation of trade secret information." *Garfias v. Portland Spray Works, Inc.*, No. 3:21-cv-00873-IM, 2021 WL 27456, at *7 (D. Or. Jan. 3, 2021).

In *Opal Labs Inc.*, the court considered whether the plaintiff's claims for tortious

interference with economic relations and fraud were preempted by the OUTSA. 2021 WL 3713042, at *7. The tortious interference claim was based on an allegation that the defendant "interfered with [the plaintiff's] business relationships 'by developing a knockoff version of [the plaintiff's] software and services and promoting that knockoff to [a third party] and [the plaintiff's] existing clients.'" *Id.* The court concluded that "the essence of [that claim] relates primarily to the alleged misappropriation of trade secrets and is superseded by the [OUTSA].'" *Id.* In contrast, the fraud claim was based on allegations that the defendant made false representations to the plaintiff during a phone call "with the intent to 'induce [the plaintiff] to continue its business relationship with [the defendant], to provide [the defendant] with further access to [the plaintiff's] software, and to trick [the plaintiff] into believing that it did not face a competitive threat[.]" *Id.* The court found the claim was not preempted because the "core allegations in [the] fraud claim—most notably, the statements made in the parties' [] phone call and [the] [p]laintiff's reliance on those statements to continue the parties' business relationship—are not the operative facts underlying [the claim for] trade secret misappropriation." *Id.*

In *AssuredPartners of Oregon, LLC*, the court considered whether the plaintiff's claims for tortious interference with economic relations and unjust enrichment were preempted by the OUTSA. 2022 WL 18024957, at *4-6. The court recited the plaintiff's allegations and then stated that a few of those "allegations are based on the alleged misappropriation of trade secrets and are therefore preempted by the OUTSA[,]" but that the "remaining allegations pertain to the solicitation of [the plaintiff's] employees, which are not preempted." *Id.* at *4 (citing *Alt. Legal Sols.*, 2009 WL 10733692, at *15). Nonetheless, the court ultimately held that the plaintiff failed to state a claim for either tortious interference or unjust enrichment because the plaintiff did not allege facts demonstrating improper means. *Id.* at *5-6.

1. *Claim for Breach of Duty of Loyalty*

To prevail on a claim for breach of fiduciary duty, a plaintiff must prove (1) "the existence of a fiduciary relationship between the parties"; (2) "a breach of one or more of the fiduciary duties arising out of that relationship"; and (3) "damage to the plaintiff resulting from a breach of one or more of those duties." *Element Materials Tech. Food US LLC v. Kahl*, No. 3:19-cv-01491-SI, 2020 WL 798156, at *4

12

(D. Or. Feb. 18, 2020) (quoting *Evergreen W. Bus. Ctr., LLC v. Emmert*, 254 Or. App. 361, 367, 296 P.3d 545 (2012), *rev'd on other grounds*, 354 Or. 790, 323 P.3d 250 (2014) (en banc)). An employee owes a duty of loyalty to their employer. *See, e.g.*, *Synectic Ventures I, LLC v. EVI Corp.*, 353 Or. 62, 72, 294 P.3d 478 (2012) (citations omitted). However, that duty exists only so long as the employee remains employed by the company. *See Konecranes, Inc. v. Scott Sinclair*, 340 F. Supp. 2d 1126, 1132 (D. Or. 2004). An employee's duty of loyalty includes "a duty not to divulge the confidential information or trade secrets of his employer for his own benefit or for the benefit of third parties." *Alexander & Alexander Benefits Servs., Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408, 1414 (D. Or. 1991) (citing *McCombs v. McClelland*, 223 Or. 475, 483-84, 354 P.2d 311 (1960)). Likewise, "[a]n employee is not entitled to solicit customers for a rival business before the end of his employment, nor can he properly do similar acts in direct competition with his employer's business." *Id.* at 1412-13 (citation omitted). In contrast, it is not a breach of the duty of loyalty for "a departing employee [to] advise customers of his employer of his intention to leave and set up a competing business." *Id.* at 1413 (citation omitted).

Here, CFP alleges that it hired Pigg in April 2020 as a lead fire alarm technician, at which time Pigg "received an employee handbook and signed an acknowledgment that he reviewed and understood its contents." Compl. ¶¶ 10, 13. "The handbook contained a provision regarding outside employment" that stated: "While employed by [CFP], employees are expected to devote their energies to their jobs with [CFP]. Employment that directly conflicts with [CFP's] essential business interest and disrupts business operations is strictly prohibited." *Id.* ¶ 13. In January 2022, CFP promoted Pigg to a higher position. *Id.* ¶ 11. In his new position, Pigg held a variety of responsibilities which required he be given access to CFP's trade secrets, "including pricing structures, client lists, marketing approaches, checklists, and other forms." *Id.* He was also "responsible for maintaining and growing [CFP's] Oregon and Washington employees, equipment, vehicles, and certain key customer relationships." *Id.* "Sometime in 2023, Pigg founded Premier[,]" a company that offers the same services as CFP in the same markets. *Id.* ¶ 12.

Then, "[i]n May 2024, [CFP] became aware that Pigg was using at least one [of CFP's]

13

employee[s] to complete work for Premier." *Id.* ¶ 14. CFP alleges that "Pigg sought to sour the relationship between [CFP] and its employees" by, for example, telling employees that Pigg had requested that CFP pay those employees more but that CFP had denied Pigg's request. *Id.* Pigg then capitalized on this soured relationship to "induce [CFP's] employees to join [Pigg] at Premier and/or recruit them to complete work for Premier while employed by [CFP]." *Id.* ¶¶ 14-16. For example, CFP specifically alleges that Pigg recruited one employee, who "called out sick from a scheduled shift with [CFP] to complete work for Premier" and who "was observed at that job site, using [CFP]'s truck and equipment" while "wearing Premier's uniform." *Id.* ¶ 17. CFP alleges that defendants "used [CFP's] equipment, including its trucks and tools, while completing competing work for Premier[,]" and that defendants "used [CFP's] [t]rade [s]ecrets to secure and complete competing work on behalf of Premier." *Id.* ¶¶ 19-20. CFP's claim for breach of duty of loyalty incorporates these allegations by reference, and additionally alleges that "Pigg violated his duty of loyalty . . . by attempting to turn [CFP]'s employees against it, soliciting [CFP]'s employees and using [CFP]'s vehicles, equipment, and [t]rade [s]ecrets to complete work for Premier, usurping [CFP]'s business opportunities, and failing to devote his full efforts supporting [CFP]'s business." *Id*. ¶ 23.

    CFP's claim for breach of duty of loyalty is not preempted by the OUTSA. CFP, like the plaintiff in *AssuredPartners of Oregon, LLC*¸ sets forth some allegations related to trade secret misappropriation (which are preempted) and other allegations related to solicitation of CFP's employees and unauthorized use of CFP's equipment (which are not preempted). 2022 WL 18024957, at *15. For example, CFP alleges that Pigg, while employed by CFP, lied to CFP employees to turn them against CFP; solicited CFP employees to perform work for or join Premier; and recruited CFP employees to call out sick from shifts they had scheduled with CFP to instead perform work for Premier using CFP's equipment, including its trucks and tools. These allegations do not depend or rely on CFP's misappropriation of trade secret allegations, and CFP's claim is thus not "based on the same operative facts" as plaintiff's claim for misappropriation of trade secrets and is not preempted by the OUTSA. *Acrymed, Inc.*, 317 F. Supp. 2d at 1217.

14

To be clear, while CFP's *claim* is not preempted, CFP's *allegations* related to trade secret misappropriation are. Any amended complaint filed by CFP should omit such allegations.

2.   *Claim for Intentional Interference with Economic Advantage*

Under Oregon law, an intentional interference with contractual relations claim requires: "(1) the existence of a professional or business relationship . . . , (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995) (en banc) (citations omitted). The elements of a claim for intentional interference with prospective economic advantage are the same. *See Allen v. Hall*, 328 Or. 276, 281-82, 974 P.2d 199 (1999) (en banc) (citations omitted).

CFP's claim for intentional interference with economic advantage incorporates by reference the allegations previously outlined and then sets forth two counts. In count one, CFP alleges that defendants intentionally interfered with CFP's economic relationship with its employees "by recruiting [those employees] to breach [their] duty of loyalty to [CFP] by completing competing work for Premier while employed by [CFP], receiving sick pay from [CFP], and by using [CFP]'s vehicles, equipment, and [t]rade [s]ecrets to further the interests of Premier" and "by lying to [CFP]'s employees" about requesting and being denied additional compensation for them." Compl. ¶¶ 29-30. In count two, CFP alleges that defendants intentionally interfered with CFP's customers and potential customers "by engaging in a competing business while owing a duty of loyalty to [CFP] by subcontracting to Premier business that was rightfully [CFP]'s" and "by using [CFP]'s equipment and [t]rade [s]ecrets . . . to benefit Premier while owing a duty of loyalty to [CFP]." *Id.* ¶¶ 38-39.

CFP's claim for intentional interference with economic advantage is also not preempted by the OUTSA. Like CFP's claim for breach of duty of loyalty, CFP's claim for intentional interference with economic advantage sets forth additional facts not related to defendants' alleged misappropriation of CFP's trade secrets. Just as the fraud claim set forth in *Opal Labs, Inc.* was based in part on statements made during a phone call, CFP's claim for intentional interference with economic advantage is based in part on

15

allegedly false statements made to employees by defendant to induce those employees to breach their duty of loyalty to CFP, which CFP further alleges those employees in fact did breach. Furthermore, CFP identifies that this claim is also based in part on defendant's use of CFP equipment. Because these allegations do not depend or rely on CFP's misappropriation of trade secret allegations, CFP's claim is thus not "based on the same operative facts" as plaintiff's claim for misappropriation of trade secrets and is not preempted by the OUTSA. *Acrymed, Inc.*, 317 F. Supp. 2d at 1217. Though CFP's claim for intentional interference with economic advantage survives, CFP is again directed to omit trade secret misappropriation allegations from this claim in any amended complaint.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss for Failure to State a Claim, ECF [19], is GRANTED in part and DENIED in part. Plaintiff's claim for injunction is DISMISSED with prejudice. Plaintiff's claim for misappropriation of trade secrets is DISMISSED without prejudice and with leave to amend. Plaintiff's claims for breach of duty of loyalty and intentional interference with economic advantage survive, as outlined in this opinion and order. The amended complaint must be filed within thirty days of this opinion and order.

IT IS SO ORDERED.

DATED this 21st day of February, 2025.

Adrienne Nelson
United States District Judge